# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| INVISIBLE FENCE, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 3:09-cv-25** |
| | ) | **(Phillips)** |
| FIDO'S FENCES, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Motion of the Defendant to Dismiss or Alternatively to Transfer the Present Matter into the Eastern District of New York Pursuant to 28 U.S.C. § 1631 [Doc. 7]. Plaintiff responded in opposition [Docs. 16, 17], and defendant replied [Doc. 23]. Furthermore, in the event the court denies defendant's motion to dismiss, plaintiff alternatively moves for a stay of proceedings until the disposition of a related case currently pending before the Eastern District of Tennessee. [Doc. 16 at 33-36].

For the reasons that follow, defendant's motion to dismiss is denied in its entirety and plaintiff's motion for a stay is granted.

## I. BACKGROUND

This is an action concerning the validity and enforcement of the trademarks Invisible® (Trademark Registration Number 1,765,230), Invisible Fence® (Trademark Registration Number 1,600,470), and Invisible Fencing® (Trademark Registration Number 1,371,021). Plaintiff Invisible Fence, Inc. ("Invisible Fence"), a wholly owned subsidiary of Innotek, Inc. [Doc. 2], makes and sells pet products, including "containment" systems which are designed to keep pets confined to certain

-1-

Case 3:09-cv-00025-CLC-HBG   Document 24   Filed 08/20/09   Page 1 of 26   PageID #: 739

areas. Among its various services, defendant Fido's Fences, Inc. ("Fido's Fences") sells and installs electronic animal containment systems such as those manufactured by plaintiff.

In 1996, Fido's Fences and a non-party to this suit, The Canine Fence Company ("Canine") entered into an agreement, pursuant to which Canine supplied Fido's Fences with Invisible Fence containment systems for resale and installation by Fido's Fences. Invisible Fence alleges that Fido's Fences "agreed that upon any termination it would not 'claim the right to use' the Invisible Fence trademarks," [Compl., Doc. 1 at 3], and further "agreed not to compete with Canine for a period of two (2) years after any termination," [*id.* at 4].

The relationship between Canine and Fido's Fences soured, and Canine terminated the agreement in or around May 2008. This termination is the subject of litigation currently pending before the Eastern District of New York, *Fido's Fences, Inc. v. The Canine Fence Co.*, No. 2:08-cv-00754-LDW-AKT. After the termination, Invisible Fence claims that "Fido's Fences continued to use the Invisible Fence trademarks, and/or trademarks confusingly similar thereto, in connection with its sale, installation and servicing of electronic animal containment systems in breach of the Agreement." [*Id.*].

In December 2008, Fido's Fences filed three Petitions for Cancellation with the United States Trademark Office Trademark Trial and Appeal Board, seeking to cancel the trademark registration numbers for Invisible®, Invisible Fence®, and Invisible Fencing®, alleging that the trademark associated with each respective registration number is invalid.

Invisible Fence accordingly brought this suit, seeking a declaration that these trademarks are valid and enforceable (Counts One through Three), as well as damages for federal and common law unfair competition, in violation of 15 U.S.C. § 1125(a) (Count Four); trademark infringement, in

violation of 15 U.S.C. § 1114 (Count Five); two counts of Breach of Contract (Counts Six and Seven); and breach of the implied covenant of good faith and fair dealing (Count Eight). Fido's Fences has moved to dismiss with prejudice, arguing that plaintiff lacks standing to bring this suit and that this court lacks personal jurisdiction over defendant. Defendant also argues that plaintiff's claims for breach of contract are vague and do not state a claim against Fido's Fences. Finally, in the alternative, Fido's Fences moves for a transfer of venue to the Eastern District of New York.

Invisible Fence responded in opposition. Included in Invisible Fence's response is plaintiff's Alternative Motion to Stay Action, in which plaintiff argues that should the court deny defendant's motion in its entirety, the case nevertheless should be stayed "until the United States District Court for the Eastern District of New York has issued a final judgment on the merits with regards to the enforceability and construction of the Distributor Dealer Agreement between Canine Fence Company and Fido's Fences." [Doc. 16 at 36].

The court will address each argument in turn.

## II.    ANALYSIS

### A.    Standing

Defendant initially argues that plaintiff lacks standing to bring the instant case, as plaintiff is not the owner of the trademarks at issue and therefore has no cognizable injury. Plaintiff has alleged violations of 15 U.S.C. § 1114 and § 1125(a) and seeks a declaratory judgment that each trademark is valid and enforceable. The court will address the issue of standing in the context of these specific statutory provisions, as the validity of the trademarks is clearly encompassed in those actions. *See* 15 U.S.C. §§ 1114, 1125.

Section 1114 provides a cause of action for the "registrant" of the trademark, 15 U.S.C. §

1114(1), whereas § 1125(a) provides a cause of action to "any person who believes that he or she is likely to be damaged by such act," *id.* § 1125(a)(1). Accordingly, standing under § 1125(a) is broader. *See Wheeler & Clevenger Oil Co. v. Doan*, No. 2:04-CV-0558, 2005 WL 1210995, at *8 (S.D. Ohio May 20, 2005) ("It is well established that one need not be the owner or registrant of a mark to have standing to sue under § 1125(a). Instead, a court looks to whether the party asserting the claim has a reasonable interest to protect." (internal citation and quotation marks omitted)); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 27:21, 32:3 (4th ed. 1996) (nonowner of mark with "some cognizable interest" may sue under 15 U.S.C. § 1125, whereas "[o]nly the federal 'registrant' has standing to sue under Lanham Act § 32(1) [15 U.S.C. § 1114(1)]").

Defendant argues that "[t]he public records in the U.S. Trademark Office show that the owner of the Marks is Innotek, Inc., a corporation with a principal place of business in Garrett, Indiana." [Doc. 8 at 5-6]. Plaintiff counters that defendant has misread the documents; an examination of the documents from the Patent and Trademark Office, plaintiff argues, demonstrates a chain of title culminating with plaintiff's ownership of the marks.

Invisible Fence Company, Inc. (a Delaware corporation headquartered in Pennsylvania) was the original registrant of the Invisible®, Invisible Fence®, and Invisible Fencing® marks at issue. [Docs. 16-1, 16-2, 16-3; *see also* 16-4 at 4].[1] In November 1997, Invisible Fence Company, Inc. changed its name to IFCO Enterprises, Inc. (a Delaware corporation). [Doc. 16-4 at 9-12; *see also*

---

[1] In its memorandum, plaintiff referred to each of these documents by the reel and frame numbers on the lower right margin and stated that such reference was "[f]or the Court's convenience." [Doc. 16 at 4]. As the exhibit was submitted in seventeen different documents, however, without any master index for the reel and frame numbers, this citation method was actually very inconvenient for the court. The court respectfully requests that in future filings, the parties refer to a document or exhibit number, as opposed to the reel and frame number, so that the court may readily access the exhibit referenced rather than searching for it among seventeen different documents.

Doc. 16-6 at 10-11]. In 1999, IFCO Enterprises, Inc. assigned the trademarks to a Pennsylvania corporation of the same name, [Doc. 16-6 at 2-5], at which time the Delaware corporation was dissolved, [*id.* at 12-14]. On January 24, 2001, this entity assigned the marks to the Canine Acquisition Company, Inc., originally incorrectly filed as an assignment from Canine Acquisitions Company, Inc. to Innotek Pet Products, Inc., but later corrected. [Doc. 16-7 at 8-10 (incorrect filing with USPTO of assignment); Doc. 16-8 at 2-5 (same); *id.* at 6 (document of actual assignment); *id.* at 8-10 (filing with USPTO of "Corrected Assignment," demonstrating ownership of the three marks); Doc. 16-9 at 2-4 (same)].

At this point, the chain of title becomes even further muddled than this incorrect assignment. On January 25, 2001, the day after IFCO Enterprises, Inc. assigned the marks to the Canine Acquisition Company, Inc., the latter entity changed its name to Invisible Fence, Inc. (the plaintiff). [Doc. 16-9 at 8-10; Doc. 16-19 at 2-7]. Also on that date, the security interest in the marks was assigned to National City Bank as collateral for a loan that both Invisible Fence and Innotek, Inc. ("Innotek") obtained. [Doc. 16-11 at 4-10; Doc. 16-12 at 2-6]. The reason for involving Invisible Fence is unclear, as this agreement was part of an Amended and Restated Credit and Security Agreement, amending a loan obtained solely by Innotek in August 2000. [Doc. 16-16 at 3-10 (security agreement between Innotek and National City Bank); Doc. 16-17 (continuation of same); Doc. 16-18 at 2-4 (same); Doc. 16-14 at 2 (detailing history of agreements with National City Bank)]. The original Credit Agreement did not include the three trademarks at issue. Nonetheless, the Contingent Patent, Trademark and License Agreement accompanying the Amended and Restated Credit Agreement lists Innotek, Inc. as the assignor of marks, including the ones at issue in this action. [Doc. 16-11 at 4]. Plaintiff claims that this is merely an "erroneous designation of Innotek,

Inc. as an assignor of the marks." [Doc. 16 at 14].

If this was an error, however, the mistake was later compounded, for on September 15, 2006, the security interest was released directly to Innotek, Inc. [Doc. 16-13 at 7-10; Doc. 16-14 at 2-8]. Also on that date, however, Invisible Fence signed a collateral agreement with Fifth Third Bank, using various trademarks, including Invisible®, Invisible Fence®, and Invisible Fencing® as collateral for a loan obtained by Radio Systems Corporation, Invisible Fence's parent company. [Doc. 16-12 at 8-10; Doc. 16-13 at 2-5].

This is the last documentation provided to the court with regard to standing. It is clear that Invisible Fence has "some cognizable interest" in the mark and therefore has standing to sue under 15 U.S.C. § 1125. *See, e.g.*, McCarthy, *supra*, § 27:21; *see also, e.g.*, *Polar Molecular Corp. v. Amway Corp.*, No. 1:07-CV-460, 2007 WL 3463112, at *3 (W.D. Mich. Nov. 14, 2007) (finding that "ownership of a mark is not required for standing to sue" under § 1125; rather, plaintiff must merely have "some discernable interest in the mark"); *Wheeler & Clevenger Oil Co. v. Doan*, No. 2:04-CV-0558, 2005 WL 1210995, at *8 (S.D. Ohio May 20, 2005) ("It is well established that one need not be the owner or registrant of a mark to have standing to sue under § 1125(a). Instead, a court looks to whether the party asserting the claim has a reasonable interest to protect." (internal citation and quotation marks omitted)). Whether plaintiff is the current registrant of the marks, however, such that it has standing to sue under 15 U.S.C. § 1114, is not clear. As documented above, there is a question as to whether Innotek, Invisible Fence, or Fifth Third Bank currently is the registrant of the marks (the marks having been released and refiled with Innotek but assigned as collateral by Invisible Fence to Fifth Third). The court will reserve a ruling on whether plaintiff has standing to

-6-

sue under 15 U.S.C. § 1114 upon further evidence at the bench trial of this matter.[2]

Finally, the court notes that it makes these findings solely as to whether plaintiff has standing to bring suit. This finding does not affect the merits of any issue before the court, in particular the court's ultimate determination on Counts One through Three as to whether the trademarks are valid and enforceable.

## B. Personal Jurisdiction

The court next turns to the paramount issue before it, whether it has jurisdiction over the defendant. In the Sixth Circuit,

> [w]here a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process."

*Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (alterations in original) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). The Tennessee long-arm statute, under which jurisdiction may be exerted on "[a]ny basis not inconsistent with the constitution of this state or of the United States," Tenn. Code Ann. § 20-2-214(a)(6), "has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," *Bridgeport Music*, 327 F.3d at 477 (quoting *Payne v. Motorists' Mut. Ins.*

---

[2] In a similar case, the Sixth Circuit declined to resolve whether a plaintiff who had standing under § 1125 also had standing under § 1114, finding that the remedies for the two causes of action being equal, the issue was moot once the court found a violation of § 1125. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Ohio*, 849 F.2d 1012, 1015 (6th Cir. 1988). This court cannot similarly gloss over the issue of standing here, as (1) plaintiff appears to request equitable relief for the alleged violations of § 1125 and damages under § 1117 for violations of § 1114 [Compl., Doc. 1 at 8-9], and (2) in any event, the court has not ruled on the merits of either claim.

*Cos.*, 4 F.3d 452, 454 (6th Cir. 1993)). Accordingly the court only inquires as to "whether exercising personal jurisdiction over [defendant] is consistent with federal due process requirements." *Id.*

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Id.* (quotation omitted). "General jurisdiction exists when a defendant's 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.' " *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (quoting *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)). Plaintiff has implicitly conceded that this court does not have general jurisdiction over defendant, as plaintiff's argument focuses solely on this court's specific jurisdiction over defendant. [*See* Doc. 16 at 16-27]. The court likewise finds that defendant clearly fails to meet this test; therefore the sole basis for its jurisdiction over defendant, if any, is specific jurisdiction. The court will focus its analysis accordingly.

"An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp.*, 428 F.3d at 615. To have specific jurisdiction over a defendant, the defendant's contact with the forum state must satisfy a three-part test established by the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence cause by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *accord, e.g.*, *Intera Corp.*, 428 F.3d at 615; *Bridgeport Music*, 327 F.3d at 477-78. This test "not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant."

*Intera Corp.*, 428 F.3d at 615.

Plaintiff "bears the burden of establishing jurisdiction but need only make a prima facie showing." *Bridgeport Music*, 327 F.3d at 478 (internal citation omitted); *accord, e.g.*, *Intera Corp.*, 428 F.3d at 615 ("The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant.").

### 1.    Purposeful Availment

"The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp.*, 428 F.3d at 616.

In October 2006, Mr. William Coden, the President of Fido's Fences, visited Knoxville. The court finds this visit constitutes purposeful availment. Defendant has attempted to minimize the extent of this visit, arguing that it was only a one-time visit. [Doc. 9 at ; Doc. 23 at 4]. The relationship of the visit to the instant cause of action will be further explored below; defendant concedes, however, that Mr. Coden visited Knoxville "for the purpose of becoming familiar with PetSafe doors and the installation thereof," [Doc. 9 at 6] and later that Fido's Fences explored "a possible and alternate business relationship with Mr. Randy Boyd," [Doc. 23 at 5]. Presumably this occurred at a lunch meting between Mr. Coden and Mr. Randy Boyd, Chairman and CEO of Invisible Fence, that plaintiff has alleged occurred, [Doc. 14, ¶ 6], and defendant has not refuted. Clearly both the business nature of the trip and the further business Mr. Coden conducted over lunch with Mr. Boyd while here constitute purposeful availment of the privilege of acting in Tennessee. Whether this purposeful availment is related to the instant cause of action, however, will be discussed below in the context of the second prong.

Moreover, a close examination of correspondence from Mr. Coden to Mr. Boyd reveals further purposeful availment of conducting business in Tennessee. On January 29, 2008, Mr. Coden wrote to Mr. Boyd, describing the breakdown in the relationship between Canine and defendant. [Doc. 14-1 at 2]. Mr. Coden expressed his fear that Fido's Fences would not be able to honor its obligations regarding the Invisible Fence warranty, and accordingly he enclosed a box of Invisible Fence equipment that, according to Mr. Coden, needed to be replaced under the Invisible Fence warranty. [*Id.*]. Given the nature of the breakdown in relations between Canine and Fido's Fences, reaching out to Invisible Fence in this manner is clearly a negotiation of conducting business that constitutes purposeful availment of the privilege of acting in Tennessee. These contacts by Mr. Coden, obviously intended to facilitate a direct relationship with Invisible Fence, were all initiated by him in his capacity as President of Fido's Fences, and "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

On the other hand, the court disagrees with plaintiff's contention that a letter from defendant's counsel to plaintiff's counsel and the service of a subpoena constitute purposeful availment. As an initial matter, defendant's argument that this does not constitute purposeful availment because defendant's counsel was the actor, not defendant, is misplaced. Under certain circumstances an agent's conduct may be attributed to the principal for personal jurisdiction purposes. 36 C.J.S. *Federal Courts* § 31 (2009) ("The acts of an agent may be imputed to the principal in order to establish personal jurisdiction over the principal."). Accordingly, it is of no import that defendant's counsel, not defendant itself, conducted the correspondence. Nevertheless, "the threat of litigation can be a factor supporting purposeful availment." *Calphalon Corp. v.*

-10-

*Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). Yet the instances in which the Sixth Circuit has found

such threats constituted purposeful availment involved numerous letters, phone calls, and e-mail

messages. *E.g.*, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1266 (6th Cir. 1996) (defendant

"repeatedly sent both electronic and regular mail messages to CompuServe about his claim, and he

posted a message on one of CompuServe's electronic forums, which outlined his case against

CompuServe for anyone who wished to read it"); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170

(6th Cir. 1988) (defendant heavily "press[ed] his claim on the plaintiff" for a nine-month period).

In contrast, the correspondence in the instant case appears to be one letter regarding the threat of

litigation as opposed to forming the substance underlying such threatened litigation. [*See* Doc. 16-

35]; *cf. Calphalon Corp.*, 228 F.3d at 723 (finding one letter outlining possible claims did not

constitute purposeful availment). Accordingly, the court does not find that this particular

correspondence constitutes purposeful availment.

Turning to whether defendant's website constituted purposeful availment, in the Sixth

Circuit, "the maintenance of [a] website, in and of itself, does not constitute ... purposeful

availment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). However,

"[t]he operation of an Internet website can constitute the purposeful availment of the privilege of

acting in a forum state ... 'if the website is interactive to a degree that reveals specifically intended

interaction with residents of the state.' " *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). "There are generally

three levels of interactivity of websites, including: (1) passive sites that only offer information for

the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid

or interactive sites that allow users to exchange information with the host computer." *See, Inc. v.*

*Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (internal quotation removed).

Defendant argues that its website is merely passive and that the maintenance thereof does not constitute purposeful availment, as it "does not provide for direct sales, includes no means for direct payment, no means for viewer registration and has no accessible order form for on-line completion, printing, or subsequent mail or facsimile delivery." [Doc. 8 at 17]. Rather, defendant argues that its website "is limited to the provision of product information, wherein further contact can be initiated by [the] viewer via e-mail or telephone if desired.... Fido's Fences['] website is passive and NO sales or transactions are completed there through." [*Id.*]. Plaintiff counters that defendant's internet activity is more significant than represented due to defendant's use of sponsored links to its website on internet search engines, which plaintiff asserts are the internet equivalent of nationwide advertising. According to plaintiff, defendant paid internet search engines to display a link to its website when certain search terms were used.

The court finds that defendant's website alone does not meet the requisite level of interactivity for defendant to have purposefully availed itself of acting in Tennessee. In *Neogen Corp. v. Neo Gen Screening, Inc.*, although the Sixth Circuit ultimately found that the website constituted purposeful availment, the court noted that the advertisement of services and the provision of basic contact information constitute "passively posted information." *Neogen Corp.*, 282 F.3d at 890. Similarly, the Sixth Circuit has further alluded that a "classic passive site" is one that "does not allow a visitor to the site to purchase products or otherwise directly transact business over the site." *See, Inc.,* 167 F. App'x at 523 (6th Cir. 2006) (quoting *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004)). Finally, unlike the website in *Neogen Corp.*, defendant's website does not "hold itself out as welcoming [Tennessee] business." Neogen *Corp.*,

-12-

282 F.3d at 891.

Whether the use of sponsored links constitutes purposeful availment, however, is less clear. In a recent case in the Middle District of North Carolina, defendants similarly argued that their website was passive and any activities relating to its purchase of sponsored links from Google, Inc. took place outside of North Carolina. *Mkt. Am. v. Optihealth Prods., Inc.*, No. 1:07CV00855, 2008 WL 5069802, at *6 (M.D.N.C. Nov. 21, 2008). In an Memorandum Opinion and Recommendation, the magistrate judge disagreed, finding:

> Defendants' argument is premised on the proposition that, because it is the customers who initiate the search, Defendants have no connection to that search. This ignores the fact that Defendants engage in a number of activities using Plaintiff's trademark, which is intended to draw individuals to their website, which, in turn, is used to make out-of-state sales. They have done this by purchasing "Sponsored Links" from Google, Inc., wherein, when an Internet user types in the trademark "opc3" or a variation, there will be a greater likelihood that the information seeker will be directed to Defendants' website. Second, they have used the trademark in metatags in their computer code for their website for the express purpose of increasing the chance that Internet search engines will point potential customers, including customers from North Carolina, to their website. Furthermore, Defendants have purchased the domain name "www.opc3.com" so that Internet users typing in the "opc3" mark will be directed to Defendants' website and Defendants' competing products. None of these actions are inadvertent choices, but intentional activity seeking to use Plaintiff's trademark in order to draw potential customers of Plaintiff to Defendants' website, where it is intended that some of Defendants' products will be shipped to North Carolina. Moreover, Defendants are not some disinterested third parties who seek merely to provide information on the website. Rather, they are direct competitors which use their websites as a means of directing potential customers of Plaintiff to Defendants' own website in order to sell the very same or similar product.

*Id.*

The District of North Dakota, however, recently found otherwise, rejecting the plaintiff's argument "that because the website is found as a sponsored link ... it constitutes advertising and business in the forum state." *Boyko v. Robinson*, No. 4:07-cv-035, 2007 WL 2358635, at *5 (D.N.D. Aug. 17, 2007). The court first found that defendant Robinson's business website, www.volumepr.com, "could be categorized as passive because VolumePR's primary purpose is to provide information about its business and its clients on the website." *Id.* Plaintiff, however, argued that the website constituted purposeful availment through advertising because the website was found

-13-

as a sponsored link to a North Dakota "area guide." Although defendant testified "that neither she nor VolumePR website communicated with" the site running the sponsored link, the court found that "[e]ven if the business did contract to place a sponsored hyperlink as [plaintiff] contends, national advertising, in and of itself, arguably does not confer personal jurisdiction. Further the Court finds that VolumePR website did not derive any business from its advertising in the forum state." *Id.* (internal citation omitted).

Although the factors discussed by these courts do not weigh heavily in favor of the court finding one way or another, the court, albeit by a narrow margin, finds that the facts more closely resemble those discussed by the court in *Boyko*. The Sixth Circuit has "take[n] no position ... as to whether, post-*Asahi*, evidence of nationwide advertising is sufficient for a finding of purposeful availment, but [has] note[d] that at least two ... sister circuits have determined that such conduct is insufficient." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 481 n.10 (6th Cir. 2003). Past case law indicates that national advertising, in and of itself, is insufficient. *See Hughes v. Cabanes Del Caribe Hotel*, Nos. 90-1995, 90-1996, 1991 WL 224057, at *3-4 (6th Cir. Oct. 29, 1991) (finding no purposeful availment and quoting Michigan case that concluded that "a single advertisement in a national publication does not, by itself, constitute 'purposeful availment' of the forum state") (quoting *Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439, 445 (Mich. 1987))). More importantly, like the website in *Boyko*, defendant's website is passive, and to the extent it solicits business by allowing customers to receive an estimate, the court notes that defendant only serves those customers in New York, New Jersey, and Connecticut. Tellingly, one of the sponsored links at issue explicitly says that defendant specializes in NY. [Doc. 16-43 at 2 (sponsored link for www.fidosfences.com "(Invisible Pet Fence Specialists NY)")]. Accordingly, the court finds that

the use of sponsored links in the instant case does not constitute purposeful availment.

This finding, however, is a distinction without a difference, as the court has already found purposeful availment with regard to Mr. Coden's trip to Knoxville and the correspondence from Mr. Coden to Mr. Boyd regarding the manufacturer's warranty. The court will next discuss whether these instances are sufficiently related to the instant cause of action.

2. *Arising From*

The Sixth Circuit has "articulated the standard for this prong in a number of ways, such as whether the causes of action were "made possible by" or "lie in the wake of defendant's contacts, or whether the causes of action are "related to" or "connected with" the defendant's contacts with the forum state." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (internal citations omitted). This is a lenient standard, and the cause of action need not formally arise from defendant's contacts. *Id.*

It is clear that under this lenient standard, defendant's purposeful availment is related to the instant cause of action. Fido's Fences was in Tennessee at least in part to establish a direct business relationship with Invisible Fence, as Fido's Fences has apparently conceded by its admission that it explored "a possible and alternate business relationship with Mr. Randy Boyd." [Doc. 23 at 5]. Indeed, it appears that defendant solicited, albeit unsuccessfully, the use of Invisible Fence's trademarks and products, and it is the alleged unauthorized use of Invisible Fence's trademarks for which it sues. Finally, Fido's Fences contacted Invisible Fence regarding a direct warranty relationship precisely because of the breakdown in its relationship with Canine, [Doc. 14-1], the underlying basis for Invisible Fence's claims for breach of contract. In short, defendant's contacts with Tennessee are clearly related to the instant cause of action, and the court finds that the second

-15-

prong of the Sixth Circuit's specific jurisdiction test is met.

### 3. Reasonableness of Exercise of Jurisdiction

Finally, the court considers whether it is reasonable for the court to exercise personal jurisdiction over defendant. "If prongs one and two of the *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). Defendant must therefore present a compelling case that jurisdiction would nevertheless be unreasonable. *See Air Prods.*, 503 F.3d at 554 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))). Under this prong, the court considers "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Contrary to defendant's assertions, the court finds that Invisible Fence's principal place of business is in Knoxville. Accordingly, Tennessee has an interest in protecting the corporation. This interest and the plaintiff's interest in obtaining relief outweigh the burden to defendant to travel to Tennessee. *Air Prods.*, 503 F.3d at 555 ("Although it would be a burden on Safetech and Davenport to travel from Kansas for this litigation, Michigan clearly has an interest in protecting a company whose principal place of business is located in Michigan."); *see also Burger King Corp.*, 471 U.S. at 474 ("[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). The court finds that defendant has failed to present a compelling case that, despite having purposefully availed itself of the privilege

-16-

of doing business in Tennessee and the connection of those activities to the instant action, jurisdiction is nevertheless unreasonable.

In sum, the court finds that it enjoys specific personal jurisdiction over the defendant.

### C.      Venue and Plaintiff's Principal Place of Business

Defendant further argues that plaintiff's principal place of business is not in Tennessee and therefore it cannot bring suit here.

It appears to the court that plaintiff's principal place of business is indeed in Knoxville, Tennessee, having recently moved the large majority of its directors, officers, and employees to Knoxville after its acquisition by Radio Systems Corporation. Even were it not, this is neither here nor there for purposes of determining whether plaintiff may bring suit over defendant in this court. It is elementary that by initiating this suit, plaintiff consents to this court's jurisdiction, and the court has determined that it enjoys personal jurisdiction over defendant. The court must determine, therefore, whether the Eastern District of Tennessee is an appropriate venue. As this case is founded on federal question jurisdiction, venue lies in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Notably, the statute makes no mention of plaintiff's principal place of business. Moreover, "[f]or purposes of venue ... a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c).

Accordingly, venue here is proper because the defendant legally resides here, being a corporation subject to personal jurisdiction here. *Id.* The court therefore finds that plaintiff's

principal place of business is of no import to whether plaintiff may file suit here. It does, however, factor into whether there is nevertheless a more *convenient* forum, which the court will discuss in greater detail below.

### D. Transfer of Venue

The court turns to defendant's alternative arguments to transfer venue to the Eastern District of New York under 28 U.S.C. § 1631 and § 1404(a).

### *1. 28 U.S.C. § 1631*

In an alternative to dismissal for lack of personal jurisdiction, defendant argues for a change of venue under 28 U.S.C. § 1631. Section 1631 provides, "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action or appeal could have been brought at the time it was filed ...." The court having found that it enjoys personal jurisdiction over defendant, this section does not apply.

### *2. 28 U.S.C. § 1404(a)*

Defendant argues that even if this court enjoys personal jurisdiction over defendant, as this court found above, the Eastern District of New York is a more appropriate venue, and accordingly transfer thereto is warranted under 28 U.S.C. § 1404(a). That section provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In considering whether to transfer a case, "[t]he district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading 'the interest of justice.' " *Kerobo v. Sw. Clean Fuels, Corp.*, 285

F.3d 531, 537 (6th Cir. 2002) (internal citation and quotation omitted).

The parties raise competing concerns over which forum is most convenient. Defendant argues that a transfer to the Eastern District of New York is appropriate because (1) its action against Canine is already pending there; (2) the majority of witnesses live in New York and Connecticut; (3) the documents regarding the alleged misuse of the trademarks are located in New York; (4) potential witnesses are subject to the subpoena power of the Eastern District of Tennessee but not the present court; and (5) it would be relatively cost prohibitive for defendant's employees to testify here, given that plaintiff conducts business nationally but defendant only conducts business locally. Plaintiff counters that as it is headquartered in Tennessee, the majority of witnesses, in particular those witnesses testifying about the validity of the marks under Counts One through Three, would be able to testify more conveniently in the present forum, and any written discovery is easily transferable to Tennessee. Plaintiff further argues that a transfer to the Eastern District of New York would unjustly delay the litigation pending there, for Fido's Fences would move to consolidate the cases, thereby delaying the trial. Finally, plaintiff argues that Fido's Fences could have initiated the present challenge but chose not to.

Many of the supporting arguments raised by the parties are not relevant. For example, plaintiff's contentions that transfer would unjustly delay the trial of *Fido's Fences, Inc. v. The Canine Fence Co.* and that Fido's Fences could have initiated the instant action had it so chosen in the Eastern District of New York are simply too speculative for this court to give them any weight. The determinative consideration in the instant case, rather, is the convenience of the parties and witnesses.

Defendant argues that it possesses many of the relevant documents, and it cannot bear the

-19-

costs of litigating in this forum as easily as plaintiff could bear the costs of litigating in the Eastern District of New York. On the one hand, although defendant raises valid concerns about evidence housed in New York or the surrounding area, on the other hand, plaintiff is headquartered here, and presumably a good deal of its evidence on all counts will rely on the testimony of its officers and employees who reside here. In all likelihood, this evidence will extend beyond that already discovered in the litigation pending in the Eastern District of New York. Accordingly, the evidence and party witnesses are likely equally distributed in the vicinity of this forum and in the vicinity of the Eastern District of New York. Further, as plaintiff further points out, documents are easily transferable. Finally, defendant's arguments that it cannot bear the costs are of little import. "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991).

Defendant does, however, raise valid concerns regarding this court's subpoena power. Defendant argues that the court will be unable to subpoena non-party witnesses, particularly anyone affiliated with The Canine Fence Company, who reside in or near the Eastern District of New York and who refuse to testify voluntarily. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring a court to quash subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person"). Yet it is not clear that such witnesses would refuse to cooperate; to the extent they volunteer to appear to testify in this forum, a subpoena is not necessary. In any event, with regard to testimony by any non-party witnesses at trial, "[t]here is no reason why the testimony of witnesses could not be presented by deposition," *Moses*, 929 F.2d at 1138; *see also* Fed. R. Evid. 804(a)(5), (b)(1), and these depositions may be taken within 100 miles of where the deponent "resides, is employed, or

-20-

regularly transacts business in person," Fed. R. Civ. P. 45(c)(3)(A)(ii).  Accordingly, while there is

some concern about the court's subpoena ability of non-party witnesses, this is not a dispositive

factor.

The court therefore finds that the balance of these concerns is fairly equal, and it does not

appear that the interest of justice mandates venue in either forum.  It is defendant, however, that

bears the burden of proof on its motion.  *See* 15 Charles Alan Wright, Arthur R. Miller, & Edward

H. Cooper, *Federal Practice and Procedure* § 3847 (2007).  Moreover, "a plaintiff's choice of

forum should be given weight when deciding whether to grant a motion to change venue," although

"this factor is not dispositive."  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).

Given these final factors, the court finds that the tie should be resolved in favor of plaintiff.

Accordingly, defendant's motion to transfer is denied.

### E.       Whether the Complaint States a Claim

Having found that defendant is subject to this court's jurisdiction, the court turns to

defendant's alternative motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim,

apparently limited to Counts Six, Seven, and Eight of the complaint pertaining to alleged breaches

of contract.[3]  Defendant argues that plaintiff's claim for breach of contract is too vague, [*see* Doc.

8 at 6 ("Likewise, Plaintiff's claims for breach of contract are vague and do not state a colorable

claim against Fido's Fences.")], and that plaintiff's claims must further fail because plaintiff was not

a third-party intended beneficiary of the claim between Fido's Fences and The Canine Fence

---

[3] Plaintiff has noted that defendant only raises these issues in its memorandum supporting its motion to dismiss and not in the motion itself.  Although these arguments in substance do appear for the first time in the memorandum, the court nevertheless finds that the discussion in the memorandum meets the general criteria for motions as set forth in Fed. R. Civ. P. 7(b)(1)(A)-(C), and accordingly such omission from the motion itself is harmless.  In any event, the court notes that defendant moved to dismiss under Rule 12(b)(6), [Doc. 7 at 1], presumably on these grounds.

Company ("Canine Fence").

### 1. Standard of Review

When considering a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

### 2. Application

The court must first determine what law governs plaintiff's claims for breach of contract. "In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state." *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). In Tennessee, "[i]f the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 475 (Tenn. Ct. App. 2003). For the intent to be honored, the choice-of-law provision must be executed in good faith; the chosen jurisdiction must bear a material relationship to the transaction; the basis of the choice must be reasonable; and finally, the parties' choice must not subvert the policy of a state having a materially greater interest and whose law would otherwise govern. *Id.*

-22-

The choice-of-law clause at issue is valid and enforceable under these criteria. First, there is no indication that the contract between defendant and Canine was entered into in bad faith. The provision is clear and explicit that "[t]his Agreement shall be construed in accordance with and governed by the laws of the state of Connecticut," [Doc. 9-2 at 11, § 21.b],[4] and neither party has pointed to any evidence that the agreement is a contract of adhesion. Second, Connecticut bears a material relationship to the transaction and the basis of the choice was reasonable, as Canine is incorporated under Connecticut law and its principal place of business is in Connecticut. [*Id.* at 1]. Finally, it does not appear the interests of Tennessee or any other state, in particular New York, are materially greater, nor does it appear that any interests would be subverted by the application of Connecticut law.

Accordingly, the court finds that Connecticut law governs the contract between Fido's Fences and Canine. As plaintiff was not a party to the contract, Connecticut law also governs whether plaintiff may sue thereon. *See R.S.C., Inc. v. S.M.E. Cement, Inc.*, No. 86-3677, 1988 WL 40079, at *3 (6th Cir. Apr. 29, 1988) (per curiam) (in Ohio forum, applying Illinois law pursuant to valid choice-of-law provision to determine whether third party to that contract was intended beneficiary).

In Connecticut, for a non-party to sue on a contract, it must first establish itself [5] as a third-

_____

[4] In general, when a court is presented with matters outside the pleadings on a 12(b)(6) motion to dismiss, the court must either exclude the materials or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). The Sixth Circuit, however, takes "a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6), *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001), and certain documents therefore may properly be considered under Rule 12(b)(6) without converting the motion to one for summary judgment. These include "the Complaint and any exhibits attached thereto." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As plaintiff attached the contract to its complaint, [Exh. B to Compl., Doc. 1-3], the court may examine the contract in this context.

[5] Connecticut law requires a party to allege in the complaint that it was a third-party beneficiary to the contract. *See Grigerik v. Sharpe*, 721 A.2d 526, 537 (Conn. 1998). Plaintiff has properly pleaded that it was an intended third-party beneficiary. [Compl., Doc. 1, ¶ 44].

party beneficiary. *See H&L Chevrolet, Inc. v. Berkley Ins. Co.*, 955 A.2d 565, 571 (Conn. App. Ct. 2008). With regard to whether plaintiff is a third-party beneficiary,

> "The law regarding the creation of contract rights in third parties in Connecticut is ... well settled.... [T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and ... that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties...."

*Wasniewski v. Quick & Reilly, Inc.*, 971 A.2d 8, 15-16 (Conn. 2009) (alterations in original) (quoting *Dow & Condon, Inc. v. Brookfield Dev. Corp.*, 833 A.2d 908, 914 (Conn. 2003)).

The contract concerns the sale and installation of the Invisible Sense System "covered by ... the trademark 'Invisible Fencing.' " [Doc. 9-2 at 1]. Drawing all inferences in favor of the plaintiff, it is clear that plaintiff has stated a claim that it is a third-party beneficiary to this contract under Connecticut law. Under the agreement, Fido's Fences undertook direct obligations to the manufacturer of the Invisible Fence System. These included, for example, promises to assure quality and performance standards, [*id.* at 2], to assure proper use of the Invisible Fencing trademark, [*id.* at 5], and to abide by the policies of the manufacturer of Invisible Fencing, [*id.* at 6].

Finally, in Connecticut, "[t]he elements a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Rosato v. Mascardo*, 844 A. 2d 893, 902 (Conn. App. Ct. 2004) (internal quotation omitted). Moreover, "[i]t is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Macomber v. Travelers Prop. & Cas. Corp.*, 804 A.2d 180, 192 (Conn. 2002) (alteration and quotation omitted). The court finds that the complaint contains "either direct or inferential allegations respecting all material elements" of these claims sufficient

-24-

to survive a motion to dismiss. *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

There remain, of course, genuine issues of material fact as to whether plaintiff is indeed the entity referenced in the underlying contract, as discussed above, [*see supra* Part II.A], but drawing all inferences in plaintiff's favor, plaintiff has certainly met its initial burden of stating a claim under Counts Six through Eight, and defendant's motion to dismiss on this basis is denied.

### F. Motion for Stay

Finally, in the event the court finds jurisdiction and does not transfer the case, plaintiff has moved to stay the present action until the Eastern District of New York has issued a final judgment on the merits. [Doc. 16 at 36]. The court has so found above, and defendant does not oppose the motion, [Doc. 23 at 6]. Accordingly, the motion is **GRANTED**, whereby this case is stayed pending the disposition of *Fido's Fences, Inc. v. The Canine Fence Co.*, No. 2:08-cv-00754-LDW-AKT, currently pending before the Honorable Leonard D. Wexler, Senior United States District Judge, in the United States District Court for the Eastern District of New York.

## III. CONCLUSION

For the foregoing reasons, the Motion of the Defendant to Dismiss or Alternatively to Transfer the Present Matter into the Eastern District of New York Pursuant to 28 U.S.C. § 1631 [Doc. 7] is **DENIED** in its entirety. Plaintiff's Alternative Motion to Stay Action [Doc. 16] is **GRANTED**, whereby the present action is **STAYED** until the disposition of Case No. 2:08-cv-00754-LDW-AKT, *Fido's Fences Inc. v. The Canine Fence Co.*, pending before the Eastern District of New York. The parties shall file a status report every ninety days until the disposition of the case pending in the Eastern District of New York.

**IT IS SO ORDERED**.

**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge