**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| Invisible Fence, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 3:09-cv-00025 |
| v. | ) | |
| | ) | Hon. Thomas W. Phillips |
| Fido's Fences, Inc., | ) | Hon. H. Bruce Guyton |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**


MERCHANT & GOULD, P.C.

9717 Cogdill Rd., Suite 101

Knoxville, TN 37932

*Attorneys for Plaintiff*
*Invisible Fence, Inc.*

## TABLE OF CONTENTS

**PAGE**

**Table of Authorities …………………………………………………………………... iii-iv**

**Factual Background ……………………………………………………………………… 2**

**A. The Distributor Agreement …………………………………………… 2**

**B. The Distributor-Dealer Agreement …………………………………… 3**

**C. The Dealer Agreement ……………………………………………..... 3**

**D. Termination of the Dealer Agreement and the CFC Litigation …….. 5**

**E. Fido's Fences Actions Against IFI …………………………………….. 7**

**F. The Circuit Court's Findings …………………………………….. 8**

**G. The False Marking and the Antitrust Lawsuits ………………………. 10**

**Standard of Decision ……………………………………………………………………. 10**

**Analysis …………………………………………………………………………………….. 11**

**A. Fido's Fences Breached its Contractual Obligations by Challenging the IFI Marks……………………………………………………………………… 11**

**B. Fido's Fences is Estopped from Challenging the IFI Marks under the Doctrine of Licensee Estoppel…………………………………………………… 13**

**Conclusion ………………………………………………………………………………. 17**

## TABLE OF AUTHORITIES

**CASES**:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986) …………………………………………………………………………………………… 10

*Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973) ……………………...... 12, 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986) ……..... 10

*E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512 (6th Cir. 1943) …………….. 12, 13

*Fido's Fences Inc. v. The Canine Fence Co.*, 309 Fed. Appx. 480 (2d Cir. 2009) ………….. 8, 9

*Hopkins v. Sellers*, Case No. 1:09-cv-304, U.S. Dist. LEXIS 58980, *9-10 (E.D. Tenn. Jun. 2, 2011) ……..... 10

*John C. Flood of Virginia, Inc. v. John C. Flood, Inc.*, 642 F.3d 1105, 1110-11 (D.C. Cir. 2011) ………………………………………………… 12

*Kebab Gyros, Inc. v. Samuel Riyad*, Case No. 3:09-cv-0061, 2009 U.S. Dist. LEXIS 117962 (M.D. Tenn. Dec. 17, 2009) …..………………………...... 15

*Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) ……………………………………….. 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986) ………………………….... 10

*Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) ………………... 10

*Norwood Promotional Products, LLC. v. Kustomkoozies, LLC.*, 835 F. Supp. 2d 685, (S.D. Ind. 2011) ..……………………………………………………… 14

*Pacific Supply Co-op. v. Farmers Union Central Exchange, Inc.*, 318 F.2d 894, 908-09 (9th Cir. 1963) ...……………………………………………………… 12

*Pride Publishing Group, Inc. v. Edwards*, Case No. 1:08-cv-94, 2007 U.S. Dist. LEXIS 90759 (E.D. Tenn. May 23, 2007) ……….... 15

*Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir.1975) ...…………………………………………………….... 12

*Seven-Up Bottling Co. v. Seven-Up Co.,* 561 F.2d 1275, 1279-80 (8th Cir.1977) …………….. 12

*Westco Group, Inc. v. K.B. & Associates, Inc.*,
128 F. Supp. 2d 1082, 1086 (N.D. Ohio 2001) ..………………………………………... 15

**RULES**:

Fed. R. Civ. P. 56(a) ……………………………………………………………………... 10

**SECONDARY SOURCES**:

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
§ 18.63 (4th ed. 2011) ………………………………………………………………… 12

Restatement (Third) of Unfair Competition § 33 cmt. D (1995) ……………………………..... 15

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| Invisible Fence, Inc., Plaintiff, v. Fido's Fences, Inc., Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No.: 3:09-cv-00025 Hon. Thomas W. Phillips Hon. H. Bruce Guyton |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

For more than two decades, Defendant Fido's Fences, Inc., ("Fido's Fences") was an authorized dealer of the INVISIBLE FENCE®-brand pet containment systems manufactured and sold by Plaintiff Invisible Fence, Inc. ("IFI") and its predecessor, the Invisible Fence Company, Inc. ("IFCO" or, collectively with IFI, "IFI"). As an IFI-authorized dealer under contract with Canine Fence Company ("CFC"), IFI's authorized distributor for the Long Island, New York area, Fido's Fences profited handsomely from using IFI's famous marks INVISIBLE FENCE®, INVISIBLE FENCING®, and INVISIBLE® (the "IFI Trademarks" or the "IFI Marks") to indicate to consumers the origin and quality of the INVISIBLE FENCE®-brand pet containment systems it sold. Now that its dealership has been terminated for cause, Fido's Fences asserts that the trademarks that contributed to 22 years of its profits are invalid and that it may freely use them to sell competing pet containment systems.

Fido's Fences is barking up the wrong tree. Both the well-established equitable doctrine of licensee estoppel and the contractual terms of Fido's Fences' dealer agreements with CFC bar it from using or attacking the IFI Trademarks. Consequently, Fido's Fences is contractually

barred and equitably estopped from challenging the validity and enforceability of the IFI Trademarks. Accordingly, the Court should grant summary judgment as a matter of law and equity to IFI on its post-termination breach of contract claim and Fido's Fences' counterclaim. Further, because Fido's Fences is contractually barred and equitably estopped from defending against them, IFI is entitled to summary judgment on its claims for declarations of the validity and enforceability of the IFI Marks.

## I. FACTUAL BACKGROUND

The equities of this case are manifestly one-sided, and the material facts are indisputable. Despite the profits it realized from selling INVISIBLE FENCE®-brand pet containment systems for 22 years, Fido's Fences has thumbed its nose at IFI and CFC and breached its contractual obligation to honor the IFI Marks by attacking them in this lawsuit and by filing three cancellation proceedings before the United States Trademark Office (the "USPTO"). Fido's Fences' audacity has morphed into disregard for the law, and it must be stopped.

### A. The Distributor Agreement

In the 1970s, IFCO pioneered a technology for containing animals within a specified area using electronic means instead of physical barriers. For its invention, IFCO was awarded United States Patent No. 3,753,421. IFCO initially marketed its animal containment system under the trademark "Invisible Fencing." On November 19, 1985, United States Registration No. 1,371,021 for the trademark "INVISIBLE FENCING" issued to IFCO. **Exhibit A**.

IFCO marketed its animal containment systems through a network of distributors and dealers. IFCO's distributor for the area encompassing Long Island, New York, was CFC. IFCO entered into a "Distributor Agreement" with CFC on August 12, 1986. [Docs. 16-21, -22]. This agreement licensed CFC to use the INVISIBLE FENCING® trademark and other marks issued to

IFCO. *Id*., § 3, at 4. It also allowed CFC to enter into agreements with dealers to sell INVISIBLE FENCE®-brand pet containment systems and use the trademarks associated with IFCO's products. *Id*.

**B. The Distributor-Dealer Agreement**

On June 30, 1989, CFC entered into a "Distributor Dealer Agreement" with William Cohen,[1] who subsequently became the President of Fido's Fences. *See* [Doc. 9-1]. This agreement authorized Mr. Coden to use the INVISIBLE FENCING® trademark under certain conditions, so long as the agreement was in effect. *See id.*, § 2, at 1. The agreement also entitled Mr. Coden to use other IFCO marks in marketing INVISIBLE FENCE®-brand pet containment systems. *See id.*, § 9(a), at 5. Under the agreement, Mr. Coden expressly acknowledged the validity of IFCO's marks. *Id.*, § 9(b), at 5. He also expressly acknowledged that the "Proprietary Mark" belonged to IFCO. *Id.*, § 9(c), at 5. Mr. Coden also agreed not to "use or claim the right to use" the marks upon termination of the Distributor Dealer Agreement. *Id.*, § 9(e), at 5-6, § 16(a), at 9.

IFCO subsequently began using the trademarks "INVISIBLE FENCE" and "INVISIBLE" in association with the sale of its pet containment systems. On June 12, 1990, U.S. Registration No. 1,600,470 for the mark "INVISIBLE FENCE" issued to IFCO. *See* **Exhibit B**. On April 13, 1993, U.S. Registration No. 1,765,230 for "INVISIBLE" issued to IFCO. **Exhibit C**.

**C. The Dealer Agreement**

Mr. Coden enjoyed the use of the IFI Trademarks pursuant to the Distributor Dealer Agreement with CFC until December 1, 1996, when that agreement was superseded by a new

---

[1] Mr. Cohen has since changed his surname to Coden. He will be referred to in this brief as Mr. Coden.

agreement between CFC and Fido's Fences. The new agreement, titled Distributor Dealer Agreement (the "Dealer Agreement"), was entered into on December 1, 1996. **Exhibit D**.

The Dealer Agreement authorized Fido's Fences to use the INVISIBLE FENCING® trademark under certain conditions, so long as the Dealer Agreement was in effect:

> The Company hereby grants to Dealer permission to use the trademark "Invisible Fencing", in connection with Dealer's sale, installation and service of Invisible Fence Systems hereunder, to the extent and in the manner set forth in written guidelines supplied to Dealer by the Company. Dealer shall immediately cease to use the trademark "Invisible Fencing" upon the expiration or termination of this Agreement for any reason.[2]

*Id.*, § 2, at 1-2. The Dealer Agreement also entitled Fido's Fences to use other IFCO marks in marketing INVISIBLE FENCE®-brand pet containment systems:

> Dealer shall us such trade names, trademarks, service marks, designs, slogans and similar property of the Company and Manufacturer, including the trademark "Invisible Fencing" (hereinafter called "Proprietary Marks"), as Company shall designate in marketing the Invisible Fence System. . . .

*Id.*, § 9(a), at 5.

Under the Dealer Agreement, Fido's Fences expressly acknowledged the validity of IFCO's marks:

> Dealer acknowledges the validity of the Proprietary Marks and agrees that it shall not do anything to infringe upon, harm or contest the rights of the Company or Manufacturer in the Proprietary Marks owned by Manufacturer or Company, respectively, or in any other mark or name which incorporates the name "Invisible Fencing."

*Id.*, § 9(b), at 5. Fido's Fences also acknowledged that the "Proprietary Mark" belonged to IFCO:

---

[2] Under the Dealer Agreement, "Company" refers to CFC, "Dealer" refers to Fido's Fences, and "Manufacturer" refers to IFCO, which later became IFI. *Id*. at 1.

> DEALER RECOGNIZES THAT THE USE BY DEALER OF ANY OF THE PROPRIETARY MARKS OR OF ANY OTHER MARK OR NAME THAT INCORPORATES THE NAME "INVISIBLE FENCING" INURES TO THE BENEFIT OF THE MANUFACTURER AND THAT ANY GOODWILL ARISING FROM SUCH USE BY DEALER SHALL REVERT TO THE MANUFACTURER SHOULD THIS AGREEMENT BE TERMINATED BY EITHER PARTY FOR ANY REASON.

*Id.*, § 9(c), at 5 (emphasis in original).

Further, Fido's Fences expressly agreed not to "use or claim the right to use" the marks upon termination of the Dealer Agreement:

> ***Upon termination of this Agreement*** for whatever cause, the permission for the use of the Proprietary Marks and names as aforesaid and any interest of Dealer therein shall cease forthwith, and ***Dealer will not use or claim the right to use any such Proprietary Marks*** or colorable imitations thereof. Dealer shall take such action and sign such documents as are reasonably required by Company or Manufacturer to evidence the fact that Dealer has ceased all use of and interest in such property.

*Id.*, § 9(e), at 5-6 (emphasis added). Fido's Fences also agreed to cease using the "Proprietary Marks" upon any termination of the Dealer Agreement:

> Dealer will immediately discontinue the use of all trade names, service marks, Proprietary Marks, signs and forms of advertising indicative of Invisible Fencing, or any other name or designation then in use by Dealer, Manufacturer or Company in connection with the business contemplated in this Agreement unless such other name or designation is not confusingly similar to the trademark "Invisible Fencing" or any other trademark, service mark or Proprietary Mark developed, owned or licensed by the Company or Manufacturer.

*Id.*, § 16(a), at 9.

**D. Termination of the Dealer Agreement and the CFC Litigation**

Fido's Fences' relationship with CFC began to sour in late 2006. In violation of the Dealer Agreement, Mr. Coden unsuccessfully asked IFI for an arrangement that would allow it to purchase IFI-brand products directly, thereby bypassing CFC. Affidavit of Randal D. Boyd

IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER, [Doc. 14, ¶ 6]. Fido's Fences failed to promote the trademarks of IFI as required by the Dealer Agreement, and by May 2007, Fido's Fences' account with CFC was $26,056.28 past due. DECLARATION OF JENNIFER HILL CONNOLLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, CV 08-754, ¶ 11-14, Exhibits C-I, **Exhibit E**. By December 2007, its account was $40,167.08 past due. *Id*. at ¶ 13, Exhibit H. One month later, after several warnings, CFC placed its account on hold. *Id*. at ¶¶ 15-18, Exhibits J-M; MEMORANDUM AND ORDER, May 22, 2008, CV 08-754, [Doc. 16-29].

In February 2008, after its buy-out negotiations with CFC failed, **Exhibit E**, at ¶¶ 11-14, Fido's Fences sued in New York state court to force CFC to provide it with product or to allow it to do business with a competitor of CFC, and CFC removed the action to the United States District Court for the Eastern District of New York, CV 08-754. *See* NOTICE OF REMOVAL, [Doc. 16-28]. Fido's Fences subsequently attempted to amend its pleadings to assert antitrust claims against CFC. *See* AMENDED COMPLAINT, CV 08-754, [Doc. 9-12]. Simultaneously, CFC learned that Fido's Fences had used sales leads provided by CFC to install containment system products of a competitor, Dog Watch, Inc., in violation of the Dealer Agreement. DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, p. 3, **Exhibit F**.

On May 10, 2008, CFC declared Fido's Fences in breach and terminated the Dealer Agreement effective May 16, 2008. LETTER DATED MAY 10, 2008, [Doc. 16-30]. CFC also demanded that Fido's Fences cease its continuing use of the IFI Trademarks and confusingly similar marks after termination of the Dealer Agreement. *Id*. Shortly thereafter, the District Court denied Fido's Fences' motion for preliminary injunction, finding that Fido's Fences'

position was contrary to the terms of the Dealer Agreement. MEMORANDUM AND ORDER, May 22, 2008, CV 08-754, [Doc. 16-29].

In the face of Fido's Fences continuing to use the IFI Trademarks and confusingly similar marks, CFC successfully sought to enjoin Fido's Fences from continuing to use telephone numbers that had been used in connection with its dealership. MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION, CV 08-754, [Doc. 16-33]. The District Court issued the injunction on September 8, 2008, ordering that for a period of six months incoming telephone calls to Fido's Fences' telephone numbers would be answered by an automated voice mail service with a recording that stated: "press 1 for Fido's Fences; Press 2 for an authorized Invisible Fence® Brand dealer." ORDER, September 8, 2008, CV 08-754, [Doc. 16-34]. Fido's Fences appealed the injunction and moved to stay the injunctive relief with both the District Court and the Circuit Court. Both motions were denied. MEMORANDUM AND ORDER, September 17, 2008, CV 08-754, **Exhibit G**; SUMMARY ORDER, CV 08-5411, **Exhibit H**.

**E. Fido's Fences Actions Against IFI**

Meanwhile, IFI sent Fido's Fences a series of cease and desist letters regarding its continuing use of the IFI Trademarks and confusingly similar marks, but to no avail. LETTERS DATED MAY 20, 2008 AND JUNE 4, 2008, [Doc. 16-32].

On December 2, 2008, despite its acknowledgment of the validity of the IFI Marks and its agreement not to "do anything to infringe upon, harm or contest the rights" in those marks, **Exhibit D**, § 9b, at 5, Fido's Fences filed three separate cancellation petitions in the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") seeking to cancel the federal trademark registrations for the IFI Marks, COMPLAINT, Exhibits C-E, [Doc. 1].

On January 8, 2009, long after the amendment deadline had passed, Fido's Fences attempted to join IFI in the New York litigation too. Its attempted joinder of IFI was denied by the District Court as "too little too late." TRANSCRIPT OF JANUARY 21, 2009 HEARING, p. 11, lines 12-16, [Doc. 16-36].

In response to Fido's Fences' TTAB action and its attempt to join it in the CFC action, IFI filed this declaratory judgment action on January 22, 2009. [Doc. 1]. On February 9, 2009, Fido's Fences moved to dismiss this action or transfer it to New York. MOTION OF THE DEFENDANT TO DISMISS OR ALTERNATIVELY TO TRANSFER THE PRESENT MATTER INTO THE EASTERN DISTRICT OF NEW YORK, [Doc. 7]; BRIEF IN SUPPORT, [Doc. 8]; and AFFIDAVIT OF WILLIAM CODEN, [Doc. 9]. On August 20, 2009, this Court denied Fido's Fences' motion to dismiss or transfer but stayed the proceedings pending the resolution of the CFC litigation. MEMORANDUM AND ORDER, August 20, 2009, [Doc. 24]. The stay was lifted on December 9, 2010. ORDER, December 9, 2010, [Doc. 33].

**F. The Circuit Court's Findings**

In a blistering opinion, the Second Circuit affirmed the District Court's preliminary injunction. *Fido's Fences Inc. v. The Canine Fence Co.*, 309 Fed. Appx. 480 (2d Cir. 2009). In concluding that there was a "clear likelihood" that CFC would be able to prove breach causing irreparable harm, the Court found that Fido's Fences had used the IFI Marks after the termination of the Dealer Agreement and that its conduct was "affirmatively misleading" and "exacerbated the potential for confusion." *Id*. at 482-83. As can be seen in the following excerpt from its opinion, the Second Circuit was extremely critical of Fido's Fences' conduct:

> With respect to Canine's likelihood of success on the merits, the record plainly supports the district court's issuance of an injunction. Section 16(a) of the Agreement required Fido's to, *inter alia*, "immediately discontinue the use of all trade names, service marks, Proprietary Marks, signs and forms of advertising

> indicative of Invisible Fencing" upon the Agreement's termination. In light of this expansive language and Fido's post-termination use of Invisible Fencing marks in online and print advertising, there is a clear likelihood that Canine could successfully show Fido's to have breached the Agreement. As for irreparable harm, . . . Canine's proof was sufficient for the district court to find irreparable harm.
>
> Until 2008, Fido's sold no electronic pet containment systems other than the Invisible Fence brand system. . . . Each time Fido's installed an Invisible Fence brand system, it put up a small blue sign with the name and phone number of Fido's Fences. The signs contained no other telephone numbers. Therefore, if a customer wanted his Invisible Fence brand transmitter or collar serviced, or wanted to purchase another Invisible Fence brand product, and he consulted the sign installed on his lawn, he would have dialed the number for Fido's, with no knowledge that, after May 2008, Fido's was no longer an authorized Invisible Fence dealer. This risk was illustrated by the testimony of Ms. Veit, which showed that a least one customer who had previously purchased an Invisible Fence system from Fido's then purchased a systems upgrade from Fido's without realizing that the upgrade was to a different brand of pet containment system.
>
> Fido's conduct exacerbated the potential for confusion. After the Agreement was terminated and Canine contacted people who had purchased Invisible Fence brand systems to let them know that Fido's was no longer an authorized Invisible Fence dealer, Fido's sent postcards to its customers stating
>
>> BE AWARE: The Canine Fence Company (Invisible Fence Brand distributer in Wilton, Connecticut) is currently being sued in Federal Court regarding allegations of Federal antitrust and unfair trade practices. We are strongly advising our customers to disregard any information they may provide and to continue to deal directly with Fido's Fences, Inc. to insure the proper service and maintenance of your pet system.
>
> Because Fido's was no longer authorized to service the transmitters and collars that make up the Invisible Fence brand system, the encouragement "to deal directly with Fido's Fences, Inc. to insure the proper service and maintenance of your pet system" was affirmatively misleading. Consumers were highly susceptible to confusion in light of this postcard and Fido's long relationship with Canine. The district court therefore did not abuse its discretion by concluding that Fido's unauthorized actions irreparably harmed Canine.

*Id*.

On remand, the District Court granted partial summary judgment, dismissing all of Fido's Fences' antitrust claims against CFC. <u>Memorandum and Order</u>, November 30, 2009, CV 08-

754, **Exhibit I**. The remainder of the CFC litigation was settled and dismissed on March 16, 2010. STIPULATION OF DISCONTINUANCE, March 16, 2010, CV 08-754, **Exhibit J**.

### G. The False Marking and the Antitrust Lawsuits

After licking its wounds, Fido's Fences took a new tack in its fight with IFI and on October 1, 2010, it sued IFI and Radio Systems Corporation ("RSC") in New York alleging false patent marking. COMPLAINT FOR FALSE PATENT MARKING, CV 10-4490, **Exhibit K**. The recently enacted America Invents Act gutted Fido's Fences' ability to recover damages under the false marking statute. Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 16, 125 Stat. 284, 329 (2011) ("the AIA") (amending 35 U.S.C. § 292). With its damages case undermined, Fido's Fences proposed to amend its complaint to include antitrust claims against IFI and RSC. *See* LETTER MOTION DATED JANUARY 13, 2012 IN THE EASTERN DISTRICT OF NEW YORK, CV 10-4490, at 2, **Exhibit L**. Because the deadline for amending pleadings had already passed, and because the essential facts were known to Fido's Fences since prior to the filing date of the original action, IFI refused to consent to the proposed amendment. *Id*. Rather than moving the Court for leave to amend, on January 13, 2012, Fido's Fences filed ***yet another lawsuit*** against IFI and RSC, this time asserting various antitrust claims. COMPLAINT FILED ON JANUARY 13, 2012 IN THE EASTERN DISTRICT OF NEW YORK, CV 12-179, **Exhibit M**.

## II. STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). While the Court views the evidence in a favorable light for the non-moving party, *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001), "the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims." *Hopkins v. Sellers*, Case No. 1:09-cv-304, U.S. Dist. LEXIS 58980, *9-10 (E.D. Tenn. Jun. 2, 2011) (citing *Celotex*, 477 U.S. at 324). If the Court determines that the fact-finder could not find in favor of the non-moving party based on the record, the Court should grant summary judgment. *Id*. at *10 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986)).

## III. ANALYSIS

Fido's Fences undertook a contractual obligation not to contest the validity of the IFI Marks. It breached that contractual obligation by attacking the IFI Marks in this lawsuit and in three cancellation proceedings before the USPTO. This fact is indisputable and, alone, entitles IFI to summary judgment. Further, apart from the contractual bar to its attacks, as a licensee of the IFI Marks, Fido's Fences is estopped from challenging the validity of those marks. For this additional reason, IFI is entitled to summary judgment. Accordingly, for either or both reasons, the Court should grant summary judgment to IFI as a matter of law and equity.

### A. Fido's Fences Breached its Contractual Obligations by Challenging the IFI Marks.

It is indisputable that Fido's Fences promised not to attack the IFI Marks. In the Dealer Agreement, Fido's Fences acknowledged the validity of the IFI Marks and agreed not to "infringe upon, harm or contest the rights of" CFC or IFI in those marks:

> Dealer acknowledges the validity of the Proprietary Marks and agrees that it shall not do anything to infringe upon, harm or contest the rights of the Company or Manufacturer in the Proprietary Marks owned by Manufacturer or Company, respectively, or in any other mark or name which incorporates the name "Invisible Fencing"…

**Exhibit D**, § 9(b) at 5. Further, it is indisputable that Fido's Fences promised not to contest the validity of the IFI Marks even after the Dealer Agreement was terminated. In the Dealer Agreement, Fido's Fences agreed that it would not "claim the right to use" the IFI Marks post-termination:

> **Upon termination of this Agreement** for whatever cause, the permission for the use of the Proprietary Marks and names as aforesaid and any interest of Dealer therein shall cease forthwith, and **Dealer will not** use or **claim the right to use any such Proprietary Marks or colorable imitation thereof**. Dealer shall take such action and sign such documents as are reasonably required by Company or Manufacturer to evidence the fact that Dealer has ceased all use of and interest in such property.

**Exhibit D**, § 9(e) at 5-6 (emphasis added). Further, it is indisputable that IFI is a third-party beneficiary of the Dealer Agreement. In the Dealer Agreement, Fido's Fences acknowledged that the IFI Marks belonged to IFI's predecessor, IFCO:

> DEALER RECOGNIZES THAT THE USE BY DEALER OF ANY OF THE PROPRIETARY MARKS OR OF ANY OTHER MARK OR NAME THAT INCORPORATES THE NAME "INVISIBLE FENCING" INURES TO THE BENEFIT OF THE MANUFACTURER AND THAT ANY GOODWILL ARISING FROM SUCH USE BY DEALER SHALL REVERT TO THE MANUFACTURER SHOULD THIS AGREEMENT5 BE TERMINATED BY EITHER PARTY FOR ANY REASON.

**Exhibit D**, § 9(c), at 5 (emphasis original).

It is equally indisputable that Fido's Fences breached its contractual obligation not to contest the validity of the IFI Marks: In its denials and counterclaims in this lawsuit, Fido's Fences has contested the validity of the IFI Marks.

These indisputable facts conclusively establish that IFI is entitled to summary judgment as a matter of law.

**B. Fido's Fences is Estopped from Challenging the IFI Marks under the Doctrine of Licensee Estoppel.**

Licensee estoppel is an equitable doctrine that bars a trademark licensee from challenging the validity of the licensor's trademark. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 18.63 (4th ed. 2011). The United States Court of Appeals for the Sixth Circuit has long recognized the doctrine of equitable estoppel. *See Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973); *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512 (6th Cir. 1943); *see also John C. Flood of Virginia, Inc. v. John C. Flood, Inc.*, 642 F.3d 1105, 1110-11 (D.C. Cir. 2011); *Seven-Up Bottling Co. v. Seven-Up Co.,* 561 F.2d 1275, 1279-80 (8th Cir.1977); *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975); *Pacific Supply Co-op. v. Farmers Union Central Exchange, Inc.*, 318 F.2d 894, 908-09 (9th Cir. 1963).

In *E. F. Prichard*, the Sixth Circuit held that a contract declaring one party to be the owner of a trademark would estop another party to the same contract from later contesting the mark's title. 136 F.2d at 522. In that case, the Court applied the doctrine of licensee estoppel to bar Consumers Brewing Company's attack on E.F. Prichard Company's title of the "Olde Towne Lamplighter" mark for use on beer products. Because Consumers Brewing had previously agreed that E.F. Prichard was the owner of the "Olde Towne Lamplighter" mark, the Court held that it could not later attack E.F. Prichard's rights in the mark: "[a] party who has agreed that [another] shall be the owner of the trade-mark[] is estopped from raising questions with regard to adoption and use." *Id*. As with Consumers Brewing, here Fido's Fences agreed that the IFI Marks belonged to IFI's predecessor, and thus it should likewise be estopped from challenging IFI's rights in those marks.

*Beer Nuts* is on point and dictates the outcome here. In that case, the Sixth Circuit applied the doctrine of licensee estoppel to bar a party's claim that the mark "BEER NUTS" was invalid as merely descriptive. In that case, the plaintiff's predecessor and the defendant had entered into a settlement agreement releasing the defendant from liability for trademark infringement in exchange for the defendant's promises to recognize the plaintiff's predecessor's ownership of and the validity of the "BEER NUTS" mark and not to use the "BEER NUTS" mark . 477 F.2d at 327. Later, the plaintiff sued the defendant for trademark infringement. The defendant attempted to defend itself by asserting that the "BEER NUTS" mark was merely descriptive and thus invalid. *Id*. The district court held that the defendant was estopped from contesting the mark's validity by virtue of its agreement with the plaintiff's predecessor.

The Sixth Circuit affirmed the district court's ruling based on the principle that a contracting party may not repudiate its promises solely because it later becomes dissatisfied with its bargain. *Beer Nuts*, 136 F.2d at 328. That principle, the Sixth Circuit concluded, trumped any policy interest in "guarding against the depletion of the general vocabulary available for the description of articles in commerce":

> When the balancing test is employed in the instant situation, we conclude that the public interest in guarding against the depletion of the general vocabulary available for the description of articles in commerce is not so great that it should take precedence over the rule of the law of contracts that a person should be held to his undertakings. Such a decision is far from unique. In *E. F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 522 (6th Cir. 1943), *cert. denied*, 321 U.S. 763, 64 S. Ct. 486, 88 L. Ed. 1060 (1944), this court held that a contract declaring one party to be the owner of a trademark would estop the other party from later contesting the mark's title.

*Id.* at 329; *see also id.* at 328 (distinguishing *Lear, Inc. v Adkins*, 395 U.S. 653 (1969) (analyzing licensee estoppel in patent context)).

The policy interest identified in *Beer Nuts* is not undermined by the doctrine of licensee estoppel because ***the doctrine limits only the licensing party's ability to attack the validity of a mark – and only where that licensing party has promised not to attack the validity of the mark in exchange for valuable consideration***. Strangers to the licensing agreement may still attack the validity of the mark. *See, e.g., Norwood Promotional Products, LLC. v. Kustomkoozies, LLC.*, 835 F. Supp. 2d 685, (S.D. Ind. 2011) ("While public policy may favor a robust environment where trademark claims are open to challenge, . . . [t]he licensee estoppel rule forecloses only the licensee."). *Id*. at 694. Thus, if marks are arguably generic, merely descriptive, or abandoned through naked licensing, ***they remain subject to challenge by third parties***. In short, the application of estoppel is not a decision that a trademark will go unchallenged. It is merely a determination that a licensee that has profited from its use of the mark should not be the one to challenge the mark if it would require that party to repudiate the contract that conveyed its rights in the first place.

District courts in the Sixth Circuit have analyzed the applicability of the doctrine of licensee estoppel on a case-by-case basis. In one case, a court applied the doctrine and rejected a licensee's contention that the licensor had no "substantive right" to the trade name in question, noting that the licensee "conceded [the licensor's] rights in the trade name when it entered the [license agreement]," such that it "cannot now claim that [the licensor] lacked the right to license the trade name." *Westco Group, Inc. v. K.B. & Associates, Inc.*, 128 F. Supp. 2d 1082, 1086 (N.D. Ohio 2001) (barring licensee from claiming that licensor abandoned rights due to naked licensing: "[A] licensee claiming that its own license is a naked license essentially seeks to benefit from its own misfeasance.").

In an easily distinguishable case, another court declined to apply the doctrine where the equities weighed heavily against the licensor. *Pride Publishing Group, Inc. v. Edwards*, Case No. 1:08-cv-94, 2007 U.S. Dist. LEXIS 90759 (E.D. Tenn. May 23, 2007) (citing Restatement (Third) of Unfair Competition § 33 cmt. D (1995)). In that case, unlike the present case, the trademark at issue was not federally registered. Further, and also unlike the present case, the licensor's state trademark registration had lapsed during the term of the agreement. Further, and also unlike the present case, the licensee had not acknowledged the validity of the trademark in the agreement. Further, and also unlike the present case, the agreement included no meaningful constraints on the licensee's use of the mark. *Id.* at *11. Thus, the licensor had not sought to exert ***any*** control over use of the mark. *Id*. at *11-12; *see also Kebab Gyros, Inc. v. Samuel Riyad*, Case No. 3:09-cv-0061, 2009 U.S. Dist. LEXIS 117962 (M.D. Tenn. Dec. 17, 2009) (similar facts and analysis). For these highly case-specific reasons, none of which are present in this case, the court concluded that the doctrine was not applicable.

Applying the same case-by-case analysis here, the Court should apply the doctrine of licensee estoppel to bar Fido's Fences from challenging the IFI Marks. The equities weigh heavily in IFI's favor. Fido's Fences and Mr. Coden enjoyed the benefits of being an IFI dealer for over twenty-two years until it failed to meet its payment obligations under the Dealer Agreement. Only after numerous warnings to satisfy its overdue balance did CFC place Fido's Fences' account on hold. Fido's Fences' answer was to sue CFC in an attempt to force CFC to provide it with more product that it apparently could not pay for. Moreover, in breach of the Dealer Agreement, Fido's Fences began purchasing and selling competing containment systems using sales leads provided by CFC, thereby forcing CFC to terminate the Dealer Agreement altogether. After termination of the Dealer Agreement, Fido's Fences continued using the IFI

Marks, and when IFI demanded that it stop, Fido's Fences further breached the Dealer Agreement by filing cancellation proceedings in the USPTO seeking to cancel the same marks of which Mr. Coden and Fido's Fences had the beneficial use for over twenty-two years. When this Court declined to dismiss or transfer this action to New York, Fido's Fences sued IFI for alleged false marking in New York. When Congress rendered that action unviable, Fido's Fences sued IFI in New York for alleged antitrust violations.

Indeed, Fido's Fences has displayed an alarming disregard for judicial resources in its campaign against IFI. Further, in addition to Fido's Fences' breach of the Dealer Agreement that necessitated its termination for cause, Fido's Fences continued to breach the Dealer Agreement by using the IFI Marks and challenging the validity thereof, despite the fact that Fido's Fences contractually acknowledged the validity of the IFI Marks and agreed not to attack them in exchange for the authorization to use them in the first place. Thus, the equities favor estopping Fido's Fences from challenging the IFI Marks.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to IFI on Counts I-III and VII of its Complaint and on the counterclaim asserted by Fido's Fences, declaring that Fido's Fences is contractually barred and equitably estopped from challenging the validity and enforceability of the IFI Marks.

Respectfully submitted this 31st day of December, 2012.

s/Ian G. McFarland
R. Bradford Brittian (TN Bar No. 7130)
John T. Winemiller (TN Bar No. 21,084)
Ian G. McFarland (TN Bar No. 30, 549)
MERCHANT & GOULD, P.C.
9717 Cogdill Rd., Suite 101
Knoxville, Tennessee 37701
(865) 380-5960 telephone

(865) 380-5999 facsimile
bbrittian@merchantgould.com
jwinemiller@merchantgould.com
imcfarland@merchantgould.com

*Attorneys for Plaintiff Invisible Fence, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2012, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

s/Ian G. McFarland