UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| INVISIBLE FENCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:09-CV-25 |
| v. ) | (COLLIER/GUYTON) |
| ) | |
| FIDO'S FENCE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the parties' Daubert challenges, which include: Motion to Exclude the Opinion Testimony of Thomas Maronick [Doc. 126]; and Motion to Exclude Plaintiff's Expert Witness Dr. Leon Kaplan [Doc. 127].[1] The parties have fully briefed the issues presented therein, and on September 18, 2013, the parties appeared before the Court to present oral arguments relating to these motions. The Court finds that these motions are now ripe for adjudication. For the reasons stated herein they will be **DENIED**.

### I. BACKGROUND

Plaintiff is in the business of making and selling pet products, including animal containment systems. Defendant is in the business of selling and installing electronic animal containment systems and is also in the business of pet-obedience training.

---

[1] The Motion to Exclude Erich Joachimsthaler [Doc. 120] and Motion to Exclude Testimony of Ronald Butters [Doc. 124] will be addressed in a separate Memorandum and Order.

The parties have a long history. For approximately twenty years, Defendant was a retailer of Plaintiff's products. The relationship soured in early 2008, and since early 2008, the Defendant has sold electronic pet containment systems manufactured by the Plaintiff's competitors.

In the instant suit, the Plaintiff moves the Court to declare the validity of: United States Trademark Registration No. 1,371,021 for the trademark "INVISIBLE FENCING"; United States Trademark Registration No. 1,600,470 for the trademark "INVISIBLE FENCE"; and United States Trademark Registration No. 1,765,230 for the trademark "INVISIBLE." Plaintiff also presents claims for unfair competition, trademark infringement, breach of contract, and breach of implied covenant of good faith and fair dealing.

Defendant denies the validity of the trademarks at issue and denies liability for the claims presented. Defendant presents a counterclaim for declaratory judgment that the trademarks for "INVISIBLE FENCING," "INVISIBLE FENCE," and "INVISIBLE" are not valid and have not been violated.

## II. ANALYSIS

The parties have disclosed experts that they expect to call as witnesses in this case. The opposing parties have challenged the expert testimony proposed pursuant to Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> at 589.  The <u>Daubert</u> standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." <u>Best v. Lowe's Home Ctrs., Inc.</u>, 563 F.3d 171, 176–77 (6th Cir. 2009).

**A.     Motion to Exclude the Opinion Testimony of Thomas Maronick [Doc. 126]**

Dr. Thomas Maronick has a doctorate degree in business administration from the University of Kentucky, with a major in marketing; he also has a doctor of jurisprudence. [Doc. 75-5 at 2].  Dr. Maronick is a Professor of Marketing in the College of Business and Economics at Towson University in Towson, Maryland.  From 1987 until 1997, Dr. Maronick served as the Director of Impact Evaluation in the Bureau of Consumer Protection at the Federal Trade Commission (FTC).  [<u>Id.</u>].  Dr. Maronick submits that in his position with the FTC he was responsible for the design and implementation of all consumer research undertaken by the FTC.

Dr. Maronick was engaged by the Defendant to design and implement an online survey of homeowners with pets to determine whether "INVISIBLE FENCE" and related terms are perceived as a common name or a brand name and offer testimony regarding the results.  [<u>Id.</u> at 3].  Participants were screened using a call to differentiate between common name and brand name items for pet-related goods.  [<u>Id.</u> at 4].  The survey sought to determine participants' ability

3

to recognize "INVISIBLE FENCE" and related terms as brand names. [Id.]. Based upon his research, Dr. Maronick concluded that the principal significance of the term "INVISIBLE FENCE" is as a common name or generic name, not as a brand name. [Id. at 7].

Plaintiff moves the Court to exclude the opinion testimony of Dr. Maronick. [Doc. 126]. Plaintiff argues that Dr. Maronick's opinion that "INVISIBLE FENCE" is primarily a generic name and not a brand name is unreliable and untrustworthy. [Id.]. Plaintiff challenges Dr. Maronick's qualifications and contends that Dr. Maronick lacks experience in executing consumer surveys for genericness consistent with the guidelines found in E.I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc., 393 F. Supp. 502, 525-27 (E.D.N.Y. 1975) (hereinafter "Teflon"). [Doc. 128 at 3-7]. Plaintiff argues that: Dr. Maronick's survey does not sample the relevant universe of consumers; it does not present the terms at issue as they would be seen by real-world purchasers; its design and selection of terms leads to bias; it does not duplicate appropriate context; it does not allow respondents to select that a trademark is both a brand name and a descriptive term; it did not test for awareness of presented names; and it is not limited to respondents who have shown an ability to correctly determine whether a term is a brand name or common name. [Id. at 9-16].

Defendant responds that Dr. Maronick is well-qualified to testify based upon his education and his experience designing surveys similar to those in this case and examining their results. [Doc. 152 at 4]. Defendant argues that Dr. Maronick applied the preferred *Teflon* test in a virtually identical fashion to the original, court-approved test. [Id. at 8]. Defendant maintains that Dr. Maronick properly vetted participants and provided appropriate context and answer choices. [Id. at 11-20]. Alternatively, Defendant argues that the criticisms are more appropriately directed at the weight afforded to the testimony not its admissibility. [Id. at 3].

4

Plaintiff replies by reiterating that Dr. Maronick is not qualified to administer the surveys on which he relies and that the surveys are fatally flawed and unreliable. [Doc. 161].

As an initial matter, the Court finds that Dr. Maronick is qualified, under Rule 702, to offer testimony regarding the genericness survey he executed and its results. The Court finds that his doctorate degree in marketing, extensive experience designing over 400 consumer related surveys, and over thirty years teaching marketing research at the graduate and undergraduate level demonstrate that Dr. Maronick is an expert qualified to testify in this matter based upon his knowledge, skill, experience, and education.

Further, the Court finds that his testimony is likely to help the trier of fact by explaining his findings regarding the public perception of the terms at issue in this case.

Finally, the Court finds that Dr. Maronick is likely to offer testimony that: is based upon sufficient data; is the product of reliable principles and methods; and was produced by applying the principles and methods in a reliable manner. Specifically, the Court finds that Dr. Maronick applied accepted and reliable principles to sufficient data in a reliable manner.

A *Teflon*-type survey is a survey in which "respondents are first instructed on the definition of common names and brand names, pre-tested on their understanding of common names and brand names, and then asked to categorize certain test and control phrases or words as brand names or common names." Schwan's IP, LLC v. Kraft Pizza Co., 379 F. Supp. 1016, 1024 (D. Minn. 2005) (citing E.I. DuPont de Nemours & Co. v. Yoshida, Int'l, Inc., 393 F. Supp. 502, 526–27 (E.D.N.Y. 1975); March Madness Athletic Ass'n L.L.C. v. Netfire, Inc., 310 F. Supp. 2d 786, 803 (N.D. Tex. 2003)).

Dr. Maronick states in his report that persons who fulfilled the survey's screening qualifications − that is, persons who owned their home and had a dog as a pet − were provided

5

the definitions of a "common name" and a "brand name." [Doc. 75-5 at 4]. Thereafter, they were asked to state whether certain words – such as, Friskies or Flea Collar – were common or brand names. [Id.]. Those who identified Friskies as a brand name and flea color as a common name continued in the survey. [Id.]. The survey participants were then supplied with a list of words and asked to indicate whether they were common names or brand names. The words provided to participants included one of the words at issue in this case. [Id.].

Based upon the foregoing, the Court finds that the execution of the survey complies with *Teflon*, generally, and the Court finds that the Plaintiff has not demonstrated that Dr. Maronick should be excluded from testifying pursuant to Rule 702 or Daubert. Moreover, the Court finds no basis for excluding the testimony pursuant to Rule 403 at this juncture. The criticisms lodged by the Plaintiff go to the weight of Dr. Maronick's opinion, not its admissibility. The Plaintiff may demonstrate the alleged deficiencies to the trier of fact through rigorous cross-examination.

Accordingly, the Motion to Exclude the Opinion Testimony of Thomas Maronick **[Doc. 126]** is **DENIED**.

**B.	Motion to Exclude Plaintiff's Expert Witness Dr. Leon Kaplan [Doc. 127]**

Plaintiff has offered its own expert and survey results from Dr. Leon Kaplan. Dr. Kaplan earned his Ph.D. in consumer/industrial psychology, with a minor in social research methods and personnel selection, from Purdue University; he also has an M.B.A. from the Wharton School, University of Pennsylvania. [Doc. 116-6 at 23-27]. From 1979 to the present, he has served as president of the Princeton Research & Consulting Center. [Id.]. He is a Member of the Marketing Research Association and is a Reviewer for the Society for Consumer Psychology. [Id.].

6

Case 3:09-cv-00025-CLC-HBG Document 179 Filed 11/26/13 Page 6 of 10 PageID #: 6153

Dr. Kaplan was retained to conduct an online survey of homeowners with pets to determine whether "INVISIBLE FENCE" and related terms are perceived as common names or brand names and to offer testimony regarding the results. Dr. Kaplan conducted such a survey, using both a screening questionnaire and a main questionnaire. [Id. at 5-6]. He found that among consumers – who live in their own home, have a yard, and own a dog – "INVISIBLE FENCE" is a well-known term. [Id. at 2]. In his report, Dr. Kaplan opines that the primary significance of the term "INVISIBLE FENCE" is as a brand name and not as a common name. [Id.].

Defendant challenges this testimony and moves that it be excluded. [Doc. 127]. Defendant argues that Dr. Kaplan's opinions are irrelevant and unreliable. Defendant maintains that Dr. Kaplan has impermissibly modified the *Teflon* test. Defendant specifically takes issue with the use of stylized fonts in the surveys, which it argues indicates a brand name to persons surveyed. [Doc. 137 at 10-12]. Moreover, Defendant argues that Dr. Kaplan has: included a "both" option that produced inaccurate results; posed awareness questions that produce bias; and given inappropriate cues to participants. [Id. at 13-19]. Defendant posits that Dr. Kaplan's methodology is not reliable. [Id. at 20-21].

Plaintiff responds that Dr. Kaplan's testimony is relevant and will aid the finder of fact. [Doc. 153 at 1]. Plaintiff argues that Dr. Kaplan is qualified as an expert through both his relevant education and experience. [Id. at 3-4]. Plaintiff maintains that the test was designed in accordance with the *Teflon* test design. [Id. at 4-5]. Plaintiff argues, alternatively, that any alleged defects go to the weight of the testimony not its admissibility. [Id. at 5-6]. Plaintiff argues that the "both" option was appropriate and the survey's questions gave an appropriate frame of reference. [Id. at 10-12].

7

In its reply [Doc. 158], Defendant maintains that Dr. Kaplan modified the *Teflon* test and poisoned the well by indicating answers to the respondents or allowing them to guess via the "both" option.

As an initial matter, the Court finds that Dr. Kaplan is qualified, under Rule 702, to offer testimony regarding the genericness survey he executed and its results. The Court finds that Dr. Kaplan is qualified to offer such testimony based upon his education and his experience in the industry, specifically, his experience as president of the Princeton Research & Consulting Center.

Further, the Court finds that his testimony is likely to help the trier of fact by explaining his findings regarding the public perception of the terms at issue in this case.

Finally, the Court finds that Dr. Kaplan is likely to offer testimony that: is based upon sufficient data; is the product of reliable principles and methods; and was produced by applying the principles and methods in a reliable manner. Specifically, the Court finds that Dr. Kaplan applied accepted and reliable principles to sufficient data in a sufficiently reliable manner.

The Court finds that, though Dr. Kaplan's survey varied a bit from *Teflon*, it did not vary to a degree that supports wholesale exclusion. Dr. Kaplan's survey limited participants who owned a home with a yard and a dog. [Doc. 116-6 at 5]. The survey excluded persons working in marketing, veterinarian positions, and legal positions. [Id. at 6]. Dr. Kaplan's survey offered an explanation of the difference between a brand name and a common name, and it required participants to confirm that they knew the difference between a brand name and a common name before proceeding. [Id. at 7]. Thereafter, the participants were presented with terms in stylized fonts and asked whether the term was a common name, was a brand name, was both, or was not a name the participant was sure about. [Id. at 9]. Finally, the participants were asked additional

screening questions about whether they would purchase a product to keep their dog from "wandering off" in the next twelve months. [Id. at 10-11].

The Court has considered all of the Defendant's critiques of Dr. Kaplan's findings. Only the stylized font issue and the "both" answer give pause regarding the admissibility of Dr. Kaplan's testimony regarding his survey results. Specifically, the Court is concerned by Dr. Kaplan's acknowledgment that his decision to present the names in stylized format "may have had some impact on some of the numbers." [Doc. 131-2 at 111]. The Court, however, finds that this deviation does not render the evidence ripe for exclusion under Rule 702. The Court finds that Dr. Kaplan's perception that his stylizing of all of the terms provided to participants, if anything, increased the likelihood of finding the terms to be brand names "across the board" can be explained to the trier of fact, [Id.], and cross-examination can be to demonstrate any basis for discounting the testimony.

With regard to the "both" option, the Court finds that supplying participants with an option to choose that a term was both a common name and a brand name distinguishes the test from the *Teflon* protocol. The Court, further, finds that the "both" option may potentially dilute the value of the survey's results. However, the Court cannot say that the inclusion of the "both" option renders the results from Dr. Kaplan's survey unreliable or otherwise susceptible to exclusion under Rule 702.

Based upon the foregoing, the Court finds that the execution of the survey complies with *Teflon* to a sufficient degree. The Court finds that the Defendant has not demonstrated that Dr. Kaplan should be excluded from testifying about his survey results in pursuant to Rule 702 or Daubert. Moreover, the Court finds no basis for excluding the testimony pursuant to Rule 403 at this juncture. The criticisms lodged by the Defendant go to the weight of Dr. Kaplan's opinion,

not its admissibility. The Defendant may demonstrate the alleged deficiencies to the trier of fact through rigorous cross-examination.

Accordingly, the Motion to Exclude Plaintiff's Expert Witness Dr. Leon Kaplan **[Doc. 127]** is **DENIED**.

### III. CONCLUSION

In sum, the Motion to Exclude the Opinion Testimony of Thomas Maronick **[Doc. 126]** and Motion to Exclude Plaintiff's Expert Witness Dr. Leon Kaplan **[Doc. 127]** are **DENIED.**

**IT IS SO ORDERED**.

ENTER:

　　　s/ H. Bruce Guyton　　　
United States Magistrate Judge